UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    20 cr. 631 (AKH)

     - against -

     HARVEY FOSTER,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## SENTENCING MEMORANDUM


KIRTON LAW FIRM
Attorney for Defendant
HARVEY FOSTER
175 Fulton Avenue, Suite 305
Hempstead, New York 11550
(516) 833-5617 ph
(516) 833-5617 fax
kirtonlawfirm@gmail.com email
By: Marlon G. Kirton, Esq.
Emilee Sahli, Esq.

1

*KIRTON LAW FIRM*

---

*Marlon G. Kirton, Esq.*                     *Nassau County:*
                                             *175 Fulton Avenue, Suite 305*
_____                              *Hempstead, New York 11550*
                                             *Tel. # (516) 833-5617*
                                             *Fax # (516) 833-5620*

March 20, 2023

VIA ELECTRONIC FILING

Honorable Alvin K. Hellerstein
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *United States v. Harvey Foster, 20 cr. 631 (AKH)*

Dear Judge Hellerstein:

## HARVEY FOSTER[1]

Harvey Foster pleaded guilty to state court drug offenses in New York County Supreme Court on January 20, 2020. He entered an 18-month detox program and graduated on November 29, 2022. His state court charges were dismissed the same day.

Harvey was arrested in the instant case on December 10, 2020. A grand jury indicted Mr. Harvey and 13 others with one count of narcotics conspiracy, two counts of Hobbs Act robbery, and one count of possession of a firearm in relation to a crime of violence. The grand jury indicted Harvey only for the narcotics conspiracy count. At the time, Harvey was in a drug

---

[1] This section was sourced from the indictment, Rule 16 discovery, The Probation Report, New York Treatment Court records, and Harvey Foster.

2

treatment program administered by the Manhattan Treatment Court (MTC). Mr. Foster has struggled with drug and alcohol addiction. Mr. Foster attended an in-patient program at Argus Community Striver House via MTC. Mr. Foster's state court attorney notified him that he had a federal arrest warrant. Mr. Foster turned himself in to federal authorities on December 10, 2020. On December 11, 2020, the Magistrate set bail conditions that allowed him to continue in the program. Mr. Foster was readmitted into the program but placed into a 45-day Clinical Intervention because he relapsed the days after his release on bail.

Mr. Foster stayed and participated in the in-patient portion of the program from December 2020 to November 2021. Mr. Foster started working for Dutch Express food delivery services in May 2021.

The Manhattan Treatment Court granted Harvey's move-out application on December 30, 2021, after completing the program's in-patient portion. MTC mandated that Harvey complete nine months of out-patient treatment on January 25, 2022.

Harvey's current job is full-time and pays $15.25 per hour. *Exhibit A.*

Harvey did struggle at times during both the in-patient and out-patient treatment. He missed meetings and tested positive. Nonetheless, Harvey did not violate the conditions of his release. His GPS-enforced curfew was removed by Order of this Court in April of 2022.

The final MTC report noted that he "has grown and made tremendous progress," "continues to show resilience, has shown the ability to apply himself to multiple things at once and still maintain sobriety," "client provides great support to other peers in the program." *Exhibit B.* His state court case was dismissed.

3

**SENTENCING FACTORS**

The United States Supreme Court, in *Apprendi v. New Jersey*, 530 US 466 (2000), focused on sentencing factors that impact the defendant. *Apprendi* requires that "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 US at 490. The Supreme Court extended the logic of *Apprendi* in the landmark *Blakely* case. *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court reviewed the constitutionality of a Washington State statute like the United States Sentencing Guidelines (USSG). In *Blakely*, the trial court sentenced the defendant to more than three (3) years above the 53-month statutory maximum for his offense. The basis of the enhanced sentence was based on a finding made solely by a judge without the jury's input. *Blakely* held that the Washington State sentencing guidelines violated the defendant's Sixth Amendment right to a jury trial. The Court reasoned that the statutory maximum is any fact found by a jury or admitted by a defendant. However, *Blakely* did not expressly apply to the USSG *Blakely, supra* at footnote 9.

The Supreme Court then applied its Sixth Amendment analysis to the USSG. *United States v. Booker*, 125 S. Ct. 738 (2005). In *Booker* (also included in the companion case of *United States v. FanFan*), the Court applied the reasoning and holding of *Blakely* to the USSG. The Supreme Court held that a statutory maximum for purposes of the Sixth Amendment was any fact proved by a jury or admitted by a defendant. The Court reasoned that for the USSG to be constitutional, they had to be advisory rather than mandatory. 18 USC 3553(b) directs that the court "shall impose a sentence of the kind and in the range" established by the Guidelines. *Booker, supra.* To the extent that this section of the statute was mandatory, the Court severed section 3553(b) and made the USSG advisory rather than mandatory on federal judges.

4

Furthermore, the Court also severed 18 USC 3742(e) as unconstitutional and held that the standard of review for appellate courts reviewing sentencing issues is "reasonableness." *Booker*, *supra*. Finally, Courts of Appeal were no longer entitled to review downward departures de novo, the standard for review is reasonableness. *Booker, supra*.

The Second Circuit's first attempt at applying *Booker* came in *Crosby*. *United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005). In that case, the defendant pleaded guilty and was sentenced to ten (10) years. He appealed, and the Court had to decide whether his sentence was unreasonable, considering the *Booker* decision. The Court remanded the case for the district court to apply the new standards in *Booker,* but it gave guidance to that Court and all district courts. It held that a district court must consider the USSG when rendering a judgment. While acknowledging that the USSG had become primarily advisory, the Court cautioned against returning to a pre-guidelines world of marked sentencing disparities. The Circuit gave a checklist for district courts to apply when implementing *Booker*, 1. The USSG is no longer mandatory, 2. The district court must consider the USSG and the other factors in section 3553(a), 3. The application of the USSG will usually require determination of the applicable range for a particular case, 4. After considering the USSG and all of the relevant factors in section 3553(a), the district court must decide whether to impose a guidelines sentence or a non-guidelines sentence, and 5. The district court is entitled to find all the facts appropriate for rendering guidelines or non-guideline sentences.

## APPLICABLE GUIDELINES RANGE[2]

Given the guidance of *Crosby*, it is necessary to determine the appropriate guidelines range for Harvey. Harvey was convicted of one count of narcotics distribution and possession with

---

[2] *Final PSR.*

intent to distribute in violation of 21 USC 841 (b)(1)( C ). The Adjusted Base offense level is 29, and the Criminal History Category is VI because the Probation Department found Mr. Foster is a career offender pursuant to USSG 4B1.1(b). According to The Probation Department, the applicable guidelines range is 151-188 months.

The Defense argues that Mr. Foster is not a career offender; therefore, his Criminal History Category is III based on a criminal history score of 5. The Defense argues that the applicable guidelines range is 108-135 months.

## DEFENDANT IS NOT A CAREER OFFENDER

The parties did not stipulate whether Mr. Foster is a career offender. This Circuit has held that in making a career offender finding, the categorical approach requires a district court to look at the elements and nature of the offense conviction rather than the particular facts relating to a defendant's crime. *United States v. Thompson*, 961 F.3d 545, 549 (2nd Cir. 2020). The test is whether the least of conduct made criminal by a state statute falls within the scope of activity that the federal statute penalizes. *Id.* Mr. Foster's status as a career offender depends on whether any of his prior convictions qualify as "narcotics offenses" for the purposes of the career offender guidelines (USSG § 2K1.1(a)(ii). Mr. Foster was convicted of criminal possession of a controlled substance in the third degree in violation of New York Penal Law § 220.16(1) in 2017 and criminal sale of a controlled substance in the third degree in violation of New York Penal Law § 220.39(1) in 2017 and 2020.

The issue centers around the definition of controlled substances. New York law defines controlled substances in New York Penal Law and New York Public Health Law. *Penal Law 220.00 (5) and Public Health Law 3306.* Controlled substances, as referenced in the relating to the defendant's Career Offender guideline, must refer exclusively to the definition of a controlled

6

substance listed under the Federal Controlled Substances Act. *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018). "To determine whether the definition matches, we must know the state crime that was committed and compare the elements of that crime to the elements of the corresponding generic federal crime." *Id.* at 72. The definition of controlled substances in the Federal Controlled Substances Act is in *21 USC 812*. The element at issue in the felony convictions of Mr. Foster is the definition of a "controlled substance."

In *United States v Hagood*, 20 Cr. 656 (PAE) (March 9, 2022), the district court held that New York Penal Law criminal possession of a controlled substance in the third degree did not qualify because such crime reached types of cocaine isomers not reached by the federal law. The Court reasoned that federal regulations limit the definition of "isomer" to the "optical" and that there was, therefore, a "mismatch with the federal law: the New York law is broader." Exhibit C- *Hagood Sentencing Transcript,* pages 13-18. Notably, the district court stated, "in so finding, I join what appears to be a uniform bloc of judges in this district – in this circuit, indeed – who have encountered this issue." *Id.* citing *United States v Gutierrez Campos*, 21 Cr. 40 (JPC) (Jan. 31. 2022); *United States v Simmons*, 20 Cr. 294 (PKC) (Nov. 17, 2021); *United States v Baez-Medina,* 20 Cr. 24 (JGK) (July 1, 2021); *United States v Ferer*, 20 Cr. 650 (NRB) (July 21, 2021). *Id*. Other judges in this district have since concurred with *Hagood* court; *See, e.g., United States v Lawrence*, 21 Cr. 127 (PGG) (August 18, 2022).

This Court joined this line of cases in the sentencing of Sirron Stafford on December 2, 2022, finding that New York Penal criminal sale of a controlled substance in the third degree is not a qualifying offense because New York's definition of "controlled substance" is "broader than that provided in federal law." *Exhibit D- Stafford Sentencing Transcript*, pages 6-7. The Defense

argues that Mr. Foster's prior offenses do not qualify as "narcotics offenses" for the purposes of the career offender guidelines.

## CLIENT'S ROLE IN THE OFFENSE

Mr. Foster pleaded guilty to narcotics distribution and possession with intent to distribute in violation of 21 USC 841 (b)(1)( C ). He did not plead guilty to conspiracy to distribute narcotics. The Rule 16 discovery noted three facts: 1. Two direct sales to a confidential informant and 2. The absence of incriminating videos between himself and the co-defendants, and 3. The absence of incriminating calls between himself and the co-defendants. The Government was persuaded that the charge for which he pleaded guilty was appropriate based on the evidence.[3]  Harvey is not facing a mandatory minimum sentence.

## CONCLUSION

The Defense requests a sentence of time served, three years supervised release, mandatory drug and alcohol testing, and drug and alcohol treatment as recommended by probation. The recommendation is based on factors in 18 USC 3553 (a).

Sincerely,

*Marlon Kirton*

Marlon G. Kirton, Esq.


cc: Andrew Rohrbach, Assistant United States Attorney (via electronic mail)
    Alexander Li, Assistant United States Attorney (via electronic mail)
    Ryan B. Finkel, Assistant United States Attorney (via electronic mail)
    Emilee Sahli, Associate Counsel (via electronic mail)

---

[3] I would not presume to know the basis of the Government's decision.

9